UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-2045(DSD/JJK)

Scott St. Martin,

Plaintiff,

v. **ORDER**

City of Saint Paul,

Defendant.

Sarah J. McEllistrem and Collins, Buckley, Sauntry & Hough, PLLP, 332 Minnesota Street, Suite W-1100, St. Paul, MN 55101, counsel for plaintiff.

Louise Toscano Seeba, St. Paul City Attorney's Office, 15 West Kellogg Boulevard, Suite 750, St. Paul, MN 55102, counsel for defendant.

This matter is before the court upon the motion for summary judgment by defendant City of St. Paul. Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

This employment dispute arises out of the failure of the City to promote plaintiff Scott St. Martin to the position of district chief (district chief) in the fire department. St. Martin began work for the City as a firefighter in May 1992 and became a fire department captain in September 1999. In September 2006, St. Martin injured his knee. He received workers' compensation and had

reconstructive surgery in October 2006. In February 2007, his doctor cleared him to resume light-duty work for four hours a day. A captain must perform more than light-duty work, St. Martin did administrative work. In June 2007, his doctor stated, "I do not believe [St. Martin] will be able to return to his fireman's duties." Seeba Ex. 5.

In September 2007, St. Martin applied to take the examination for one of three available district chief positions. A district chief is one rank above a captain. St. Martin passed the exam. Thereafter, fire department chief Timothy Butler notified the candidates that "[a]ll candidates on the eligible candidate list will be interviewed to determine who will be the best fit for the department" and listed the characteristics he sought. Seeba Aff. Ex. 21. When the final list of five eligible candidates was sent to the fire department in February 2008, St. Martin's examination score placed him second.

The City required a medical clearance for St. Martin, showing that he met the physical requirements of a district chief. On February 11, St. Martin's doctor said that "St. Martin is capable of performing all of the duties and physical requirements associated with [the district chief] position without exception. McEllistrem Aff. Ex. 6.

A panel of three interviewed St. Martin on February 15. During the interview, Butler asked St. Martin, "I understand you

haven't been working. I know that you have an injury. What do you have?" Butler Dep. 74-75. Butler described the knee injury and said that he didn't need any accommodations. According to Butler, St. Martin's response was consistent with the doctor, and he considered the issue "case closed" and that they were "good to go." Id. at 75. The panel recommended St. Martin for one of the positions. Butler, however, selected the candidates ranked three, four and five on the list, and did not promote St. Martin or the highest-ranked candidate. St. Martin requested a meeting with Butler. At the meeting, Butler gave St. Martin suggestions about how he could perform better in interviews. See id. at 111.

Another district chief position became available in October 2008. St. Martin was one of three candidates certified to the fire department for consideration. He met with Butler before the interview. Butler told St. Martin about the two types of questions he would be asking in the interview, and described the characteristics he sought for the position. See Baker Dep. 117-19. According to St. Martin, Butler said "something referring to my medical condition" during the interview. Baker Dep. 59. After interviewing the three candidates, the panel again recommended St. Martin for the position. Butler selected another candidate.

Butler sent an email to St. Martin notifying him that he had selected another candidate for the position. Butler also noted that St. Martin was at a competitive disadvantage because he was

not "involved daily in the operations and administration of department programs" or "exercising command and leadership on a daily basis." McEllistrem Aff. Ex. 17. Butler noted that St. Martin needed to "make a significance [sic] investment in personal professional development and department involvement" and that "given [his] medical status that will be difficult." Id. He then suggested St. Martin consider several courses and volunteer opportunities on committees and task forces provided that they would not "adversely impact your medical condition or the status of your disability." Id.

In January 2009, Butler sent an email to the City's human resource department, stating that St. Martin's EMT certificate, which was required for captains but not required for district chiefs, would be expiring, and that they needed to sign St. Martin up for a recertification course. Id. Ex. 18. He also stated that St. Martin "cannot do the job" of captain, and that he "would not willingly promote him unless I was forced to." Id. Butler urged action because St. Martin's benefits were running out, and he did not want to promote him. Id.

St. Martin filed a charge of discrimination with the Equal Opportunity Employment Commission on January 22, 2009.[1] He

---

[1] Butler interviewed St. Martin on May 11, 2009, for another district chief position, and did not select St. Martin. This third interview was not included in the January 2009 charge of discrimination. Therefore, St. Martin's claims arising out of this (continued...)

received a right-to-sue letter from the EEOC on April 24, 2009,[2] and began this action in Minnesota state court on July 14, 2009, claiming discrimination in violation of the Americans with Disabilities Act of 1990 (ADA) and the Minnesota Human Rights Act (MHRA). The City timely removed and moved for summary judgment. The court now considers the motion.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c);[3] see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could

---

[1](...continued) promotion opportunity fail because he has not exhausted his administrative remedies.

[2] The record does not indicate that St. Martin received a no-probable-cause letter from the Minnesota Department of Human Rights. Failure to exhaust administrative remedies would provide an independent basis to dismiss his MHRA claim.

[3] The court cites the Federal Rules of Civil Procedure in effect at the time of the motions and hearing. Changes effective December 1, 2010, do not affect the outcome of this case.

cause a reasonable jury to return a verdict for either party. See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324. Moreover, if a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23.

**II. Disability Discrimination**

An employer may not "discriminate against a qualified individual on the basis of disability." See 42 U.S.C. § 12112(a) (2006).[4] The term "disability" means 1) a physical or mental impairment that substantially limits one or more major life activities, 2) a record of such impairment, or 3) being regarded as

[4] The court cites the version of the ADA in effect at the time of the events that give rise to this action. The parties did not urge the court to apply the amendments effective January 1, 2009. See Nyrop v. Indep. Sch. Dist. No. 11, 616 F.3d 728, 734 n.4 (8th Cir. 2010).

having such an impairment. Id. § 12102(2); see Minn. Stat. § 363A.03, subdiv. 12.[5]

In his response to the instant motion, St. Martin appears to abandon his arguments that he was disabled or had a record of disability and instead focuses on the regarded-as clause of the statute. He makes several references to the other definitions, however, and as a result, the court addresses those bases as well.

**A. Substantial Limitation of a Major Life Activity**

An individual is disabled for ADA purposes when he has either "a physical or mental impairment that substantially limits one or more major life activities" or a record of such an impairment. Major life activities include, performing manual tasks, walking, standing, lifting, reaching and working. See Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 948 (8th Cir. 1999); Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997); 29 C.F.R. § 1630.2(i). The parties agree that St. Martin's knee injury is a physical impairment.

A plaintiff is substantially limited in working only when unable to work in a broad class of jobs. See 29 C.F.R.

[5] The analysis of claims under the ADA and MHRA is the same, except that the MHRA applies a "less stringent" standard of "materially limiting" than the ADA standard of "substantially limiting." See Kirkeberg v. Canadian Pac. Ry., 619 F.3d 898, 908 (8th Cir. 2010) (citing Sigurdson v. Carl Bolander & Sons, Inc., 532 N.W.2d 225, 228 (Minn. 1995)). St. Martin, however, makes no argument as to why he might be "materially limited" rather than "substantially limited."

§ 1630.2(j)(3)(i). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Id.; Snow v. Ridgeview Med. Ctr., 128 F.3d 1201, 1206-07 (8th Cir. 1997). In short, a plaintiff must show a significant reduction in meaningful employment opportunities due to his impairment, in light of his expertise, background, and job expectations. Pittari v. Am. Eagle Airlines, Inc., 468 F.3d 1056, 1062 (8th Cir. 2006).

The City argues that St. Martin is not disabled because he is not substantially or materially limited in a major life activity. In this case, St. Martin only offers evidence that he is unable to work a particular job: firefighter. He is able to work as an inspector or a district chief. As a result, he fails to show that he is unable to work a broad class of jobs or that he suffered a significant reduction in employment opportunities. See Pittari, 468 F.3d at 1062 (plaintiff flight attendant did not suffer significant reduction in employment opportunities when he could work as gate agent, baggage handler, directing passengers or secretarial work). Therefore, his claims that he was disabled or had a record of being disabled fail, and summary judgment is warranted on those bases.

**B. Regarded as Disabled**

An employee is regarded as having a disability when the employer mistakenly believes that an actual, non-limiting

impairment substantially limits one or more of the individual's major life activities. Pittari, 468 F.3d at 1061. To survive the motion for summary judgment, St. Martin must present direct evidence of discrimination or establish an inference of unlawful discrimination through the burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)). See Norman v. Union Pac. R.R. Co., 606 F.3d 455, 459 (8th Cir. 2010).

**1. Direct Evidence**

Direct evidence shows "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." King v. United States, 553 F.3d 1156, 1160 (8th Cir. 2009). "[E]vidence of remarks of the employer that reflect a discriminatory attitude, comments which demonstrate a discriminatory animus in the decisional process, or comments uttered by individuals closely involved in employment decisions all may constitute direct evidence." Id. at 1161 (citation and internal quotation marks omitted).

St. Martin first argues that Butler's question about his knee injury is direct evidence of discriminatory animus based on disability. The City responds that a district chief may need to perform the duties of a captain. Viewed in the light most favorable to St. Martin, Butler's knowledge that St. Martin had

suffered an injury that disqualified him from working as a firefighter, and that the doctor had cleared him to perform as a district chief, the limited question does not demonstrate discriminatory animus.

St. Martin next argues that Butler's statements that he would rather St. Martin take disability and that he would give St. Martin the benefits he wanted demonstrate animus. The court disagrees. These statements merely show that Butler did not want to promote St. Martin; they demonstrate no discriminatory animus and no connection between his disability and Butler's decisions not to promote him. Dislike of an applicant is not unlawful. There is no evidence that Butler's dislike of St. Martin had anything to do with disability.

St. Martin also argues that the November 2008 email, in which Butler suggests that St. Martin would benefit from additional training and involvement, but that "it would be difficult given his disability" shows discriminatory animus. These comments are not evidence that Butler regarded St. Martin as unable to perform the work of a district captain. Instead, they reflect the reality that St. Martin could not work as a firefighter. He is presently employed by the City as a fire inspector. Mere use of the word "disability" is not evidence of discrimination. Viewing the evidence in the light most favorable to St. Martin, the City viewed him as unable to perform the duties of a firefighter and

firefighter captain. See Smith v. City of Des Moines, Iowa, 99 F.3d 1466, 1975 (8th Cir. 1996). There is no evidence that Butler or the City believed St. Martin unable to perform other jobs, including district captain. Therefore, St. Martin has not produced direct evidence of discrimination.

**B. Indirect Evidence**

To avoid summary judgment, St. Martin must make a prima facie showing that (1) he is disabled within the meaning of the ADA, (2) he is qualified to carry out the essential functions of his position, and (3) he suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination.

The parties agree that St. Martin was unable to work as a firefighter. The parties also agree that he was qualified to work in other positions, including district chief. Viewed in the light most favorable to St. Martin, the evidence shows that the City believed, correctly, that he was unable to work as a firefighter. The court has already determined that Butler's question and comments are not evidence that he regarded St. Martin as physically unable to perform the duties of a district captain. Moreover, there is no evidence from which a jury could draw a reasonable inference that Butler failed to promote St. Martin as a result of his perceived disability.

Moreover, even if St. Martin could meet his prima facie burden, his claim fails at the pretext stage. The City articulated legitimate, nondiscriminatory reasons for promoting others. Butler was presented with five qualified candidates for three promotions in February 2008. He chose the three individuals who he determined best matched his articulated characteristics. Butler was presented with three qualified candidates for one promotion in October 2008. He chose an individual who had seven years of post-secondary education, was trilingual and had military leadership experience.

St. Martin argues that Butler's decisions were pretext for unlawful disability discrimination. Specifically, he argues that he ranked higher in the eligibility pool based on his test score, and that the deputy chiefs recommended him for the promotion. St. Martin fails to show, however, that similarly situated applicants were treated differently by Butler. The fact that past fire chiefs promoted in rank order is not evidence that Butler's decision to interview candidates and exercise his discretion was pretext for disability discrimination. First, Jay Monogue, who ranked above St. Martin, was also in the eligible pool in February and October 2008. Monogue was not promoted. Second, there is no evidence that Butler accepted the deputy chiefs' recommendations for the other positions. Therefore, St. Martin's claim fails, and summary judgment is warranted.

## III. Failure to Accommodate

An employer must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). Such accommodations can include reassignment to a vacant position. Id. § 12111(9)(B). The parties agree that no reasonable accommodation was available to allow St. Martin to work as a firefighter captain. St. Martin sought — and the City interviewed him for — four district chief positions.[6] The City promoted others that it felt were better qualified. The ADA does not require the City to promote St. Martin as an accommodation. Nyrop, 616 F.3d at 737; accord Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir. 2001). Moreover, St. Martin's request that the City simply assign him to work out-of-title as a district chief is an unreasonable attempt to sidestep the promotion process. The Fire Supervisory Association determines such assignments, and St. Martin agrees that he was no longer able to work as a captain, a requisite position to be eligible for out-of-title work as a district chief. See Seeba Aff Ex. 33. Last, arson investigators are tested civil service positions. There is no evidence that St. Martin ever applied or

[6] The City also interviewed St. Martin for a fifth district chief position in May 2009.

even passed the test to become eligible for such position. See id. Ex. 32.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that the motion for summary judgment [ECF No. 11] is granted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: March 4, 2011

s/David S. Doty
David S. Doty, Judge
United States District Court